IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| WILLIE PENSON | CIVIL ACTION |
|---|---|
| v. | NO. 17-1981 |
| PHILADELPHIA PRESBYTERY HOMES, INC., and PHILADELPHIA PRESBYTERY HOMES AND SERVICES FOR THE AGING d/b/a PRESBY'S INSPIRED LIFE | |

Baylson, J.                                                            September 20, 2018

## MEMORANDUM RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In this case, we must determine whether genuine disputes of material fact preclude summary judgment on behalf of Defendants, Philadelphia Presbytery Homes, Inc., and Philadelphia Presbytery Homes and Services for the Aging d/b/a Presby's Inspired Life ("Presby's"). Plaintiff Willie Penson initiated this suit alleging that Defendants committed several violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Pennsylvania Human Relations Commission ("PHRA"), by unlawfully terminating his employment as a housekeeper.

For the reasons discussed below, Defendants' motion for summary judgment is **DENIED.**

### I. UNDISPUTED FACTS

The following is a fair account of the factual assertions at issue in this case, as taken from both parties Statements of Fact and not genuinely disputed.

#### A. Background: Employment with Presby's and Einstein Healthcare

Plaintiff Willie Penson was hired by Presby's in July of 2015 to work as a Housekeeper in the Presby's housekeeping department, a position that he was fully qualified for. ECF No. 37,

1

Def.s' Statement of Facts ("DSOF") ¶ 1; ECF No. 39, Plaintiff's Statement of Facts ("PSOF") ¶ 5; ECF No. 41, Def.s' Response to Pl.'s Statement of Facts ("Def.'s Res. PSOF") ¶ 5. At all times during his employment, Mr. Penson was supervised by Nancy Chabaud, Director of Facilities; Brittany Roche served as the Human Resources Director/Coordinator; Michelle Bryk was Vice President of Human Resources; and Lori Gresko worked as an Administrator. DSOF ¶ 8; PSOF ¶ 4; Def.'s Res. PSOF ¶ 5.

Mr. Penson worked at Einstein Healthcare concurrent with his employment with Presby's and performed similar duties at each facility. DSOF ¶ 21.

### B. Presby's Attendance Policy

Presby's had an Attendance Policy in place at all times during Mr. Penson's employment. DSOF ¶ 2. Under the Policy, "[t]eam members whose loss of time exceeds the standards for acceptable attendance will be issued disciplinary action consistent with the Attendance Policy…Lost time is defined as an occasion of absence, lateness, early departure, or partial absence." DSOF, Exh. B at 23. Presby's attendance Policy provided for progressive discipline as a consequence of occurrences of "attendance call-outs," including "lost time" for "Illness not covered under the FMLA," "Family emergencies not covered under the FMLA," "Transportation problems," "Weather-related problems (other than those designated as 'severe emergency conditions' by the CEO…)," and "Non-work related matters." DSOF ¶ 3; Pl.'s Response to Def.s' Statement of Facts ("Pl.'s Res. DSOF") ¶ 3; DSOF, Exh. B.[1] Cumulative absences are cause for discipline under the Policy: "Excessive lost time, whether it is a result of illness, lateness, early departure or other circumstances, is considered collectively to determine

---

[1] Plaintiff asserts that the attendance policy "explicitly allows for excused absences for illness." Pl.'s Br. in Opposition to Def.s' Mtn. for Sum. Jmt. at 17. However, this is a clear misreading of the policy, which is provided in Exhibit B to Defendants' Statement of Facts. There is no genuine dispute as to whether Plaintiff's interpretation is correct—the terms of the policy are plain, and they do not exempt absence for illness.

appropriate levels of discipline. The evaluation period for the purposes of this policy is the most recent twelve (12) month period of productive time." DSOF, Exh. B at 24. Pursuant to the Presby's Attendance Policy, employees are subject to termination of employment upon accumulating ten attendance violations. DSOF ¶ 27; DSOF, Exh. B at 24.[2] The standard protocol for a call out is for an employee to telephone his or her manager. PSOF ¶ 20.

When asked "[i]s every call out counted towards a disciplinary action?" Ms. Roche testified "yes." Pl.'s Br. Exh. B, Roche Deposition at 21:20-22. When asked if there is no exception to that rule Ms. Roche testified that "there would be [an exception] if it was more than three," that "[i]f it happened to be a death of a close family member or something along those lines, that would be funeral leave," and when asked "if an employee was in the hospital and couldn't come in that day, would that be an excused absence?" she stated "Presby didn't do that…a call out was a call out." Pl.'s Br. Exh. B, Roche Deposition at 21:23-22:14.

While working at Presby's Mr. Penson was aware of the attendance policy, had reviewed it with his supervisor, Nancy Chabaud, and stated that he had "no problem" with its enforcement. DSOF ¶¶ 5-6; Pl.'s Res. DSOF ¶¶ 5-6. Mr. Penson is not aware of any employee for whom the attendance policy was not enforced. DSOF ¶ 16.

### C. Attendance Policy Violations

---

[2] Plaintiff challenges this characterization of the attendance policy on the basis that "an employee will not be disciplined for valid illness and presentation of medical paper work if the employer contests the validity of the illness." Pl.'s Res. DSOF ¶ 27. Again, this inaccurately states the Attendance Policy, which is very clear on its face. The Policy provides that "[t]eam members who are absent form work for three (3) or more consecutive workdays are required to provide proof of illness," and goes on to clearly state the requirements for so providing, ultimately indicating that "[f]ailure to provide proof of illness…will result in disciplinary action." DSOF, Exh. B at 23. This piece of the Policy does not create any type of exception to the general rules regarding call-outs and progressive discipline for call-outs. Again, there is no genuine dispute as to the terms of the policy, including the fact that ten attendance violations triggers termination of employment.

Presby's disciplined Mr. Penson for numerous attendance call-outs during his time working there. DSOF ¶ 4; Pl.'s Res. DSOF ¶ 4. Mr. Penson received a verbal warning regarding his first seven call-outs in January of 2016. DSOF ¶ 9; Pl.'s Res. DSOF ¶ 9; Pl.'s Br. Exh. E. Mr. Penson received a Written Warning, dated February 18, 2016, after his eighth call out. DSOF ¶ 10. On April 21, 2016, following his ninth call out Mr. Penson was suspended for two days, from April 22 to April 23, 2016. DSOF ¶ 12; Pl.'s Res. DSOF ¶ 12; Pl.'s Br. Exh. G. Mr. Penson did not challenge his suspension. DSOF ¶ 13; Pl.'s Res. DSOF ¶ 13. Mr. Penson did not file a formal complaint through the Presby's internal complaint process with regard to his attendance policy violation. DSOF, Exh. A, Penson Deposition at 132:14-20. None of Mr. Penson's first nine call-out occurrences were covered by the ADA. PSOF ¶ 7. Mr. Penson was aware that after he was suspended, his next attendance policy violation would result in the termination of his employment. DSOF ¶ 14; Pl.'s Res. DSOF ¶ 14.

### D. June 6, 2016 Call-Out

On June 6, 2016, Mr. Penson went to Presby's in person to inform his superiors that he could not work that day or the next. DSOF ¶ 17; Pl.'s Res. DSOF ¶ 17. Mr. Penson asked to be excused and presented discharge papers and other documentation from his visit to the hospital the prior night to Brittany Roche; Ms. Roche wrote in an email to Michelle Bryk, Nancy Chabaud, and Lori Gresko on December 1, 2016, that Mr. Penson brought his sciatica medical condition to her attention "prior to the start of his final shift, as he came straight from the hospital that morning and provided me with the medical documentation." Pl.'s Br. Exh. I. The parties disagree about whether Mr. Penson ever asked anyone at Presby's for an accommodation due to a disability.

4

In an email sent on June 6, 2016 to Ms. Bryk, Ms. Gresko, and Ms. Chabaud, Ms. Roche wrote "Willie Penson is on his 10th call out as of today.  He is calling out due to sciatic pain.  He stopped in this morning on the way to the doctors to give Nancy and I his out of work note, which places him out of work until 6/8 and also showed me the hospital documentation from last night."  Pl.'s Br. Exh. P.

Mr. Penson testified that Ms. Roche told him that he could not return to work unless he had documentation from a doctor indicating that he could return with "no restrictions."  Pl.'s Br. Exh. C, Penson Deposition 105:10-23, 107: 17-108:4.  Ms. Roche testified that she told Mr. Penson to bring a doctor's note to return to work after June 6, 2018 indicating he could return without any restrictions "[b]ecause if he was going to be returning with restrictions, we did not accept that, that he would need to be returning full duty," and that they would not have accepted it if he had restrictions "per company policy," she clarified, "we only accepted restrictions if it were due to Workers Comp."  Pl.'s Br. Exh. B, October 17, 2017, Brittany Roche Deposition at 36:3-21.  Plaintiff asserts that Ms. Roche spoke to him about her husband's back pain, and in particular about her husband suffering from sciatica—specifically, Mr. Penson asserted that Ms. Roche stated to him that her husband suffered from sciatica and "you can't work" when dealing with that condition.  Pl.'s Br. Exh. K, EEOC Charge filed by Mr. Penson against Phila. Presbytery Homes, Inc.  Defendants dispute this, relying on Ms. Roche's testimony that she did not speak with Mr. Penson about this subject matter.  PSOF ¶ 16; Def.'s Res. PSOF ¶ 16.

Mr. Penson was able to return to work on June 8, 2016, and to perform all of the essential functions of his job at Presby's and Einstein Healthcare.  DSOF ¶ 30.  He obtained a medical provider's note clearing him to return to work without restrictions on June 8, 2016.  DSOF ¶ 19; Pl.'s Res. DSOF ¶ 19.  Specifically, he obtained a "Work/School Release Note" from Nazareth

Hospital indicating that he was seen at Nazareth Hospital on June 6, 2016, and they he may return to work on June 8, 2016; he obtained documentation from AbbottsFalls, dated June 6, 2016, indicating that he should be excused from work for "[m]edical reasons" starting June 6, 2016, and ending June 7, 2016; and he obtained an prescription form from Abbottsford Falls Family Practice dated June 6, 2016 stating that he was cleared to return to work "without restrictions." DSOF, Exh. I. Mr. Penson did in fact return to work at his job at Einstein Healthcare on June 8, 2016. DSOF ¶ 23; Pl.'s Res. DSOF ¶ 23; DSOF, Exh. A, Penson Deposition at 116:10-117:12. Mr. Penson continued to work at Einstein after June 8, 2016. DSOF ¶ 24.

### E. Termination from Employment with Presby's

The June 6th call-out was Mr. Penson's tenth attendance violation. DSOF ¶ 26. Ten call-outs triggers termination of employment pursuant to Presby's Attendance Policy. DSOF ¶ 27; DSOF, Exh. B at 24.

In an email to Ms. Roche, Ms. Gresko, and Ms. Chabaud, on June 6, 2016, Ms. Bryk wrote "[i]f [Mr. Penson] is out for 3 days, while he may not qualify for FMLA, he would be eligible for a leave of absence if approved by his supervisor. Any LOA/FMLA approved by a supervisor is not subject to disciplinary action. If he receives a release with restrictions then a medical LOA should be offered to him." Pl.'s Br. Exh. P. On June 7, 2016 Ms. Bryk sent an email to Ms. Gresko, Ms. Chabaud, and Ms. Roche, in which she wrote: "How many days did the doctor's note take [Mr. Penson] out of work? If it is only for 2 days, then proceed [with termination of employment]." Pl.'s Br. Exh. Q. Ms. Roche responded to all of the parties on the email chain stating "[t]he original doctors note he gave me on Monday morning [June 6] was for

6

2 days.  Lori and Nancy, please proceed with termination tomorrow morning before Willie starts his shift."  Id.

On the morning of June 7, 2016, Mr. Penson informed his supervisor, Ms. Chabaud, via text message that he would "be there tomorrow morning."  Pl.'s Br. Exh. T.  On June 8, 2016, Mr. Penson went to the Spring Mill Presby's location.  PSOF ¶ 39; Def.'s Res. PSOF ¶ 39.

Mr. Penson's employment with Presby's was terminated effective June 8, 2016.  DSOF ¶ 28; PSOF ¶ 40; Def.'s Res. PSOF ¶ 40.  MS. Chabaud and Ms. Gresko terminated Mr. Penson's employment verbally.  PSOF ¶ 46; Def.'s Res. PSOF ¶ 46.  Mr. Penson also received a letter of termination from Presby's dated June 20, 2016, stating that he was terminated due to his excessive absences.  DSOF ¶ 31; Pl.'s Br. Exh. W.  Defendants admit that Ms. Roche was involved as a decision-maker in terminating Mr. Penson's employment.  PSOF ¶ 46; Def.'s Res. PSOF ¶ 46.  Presby's does not dispute that without Mr. Penson's June 6 and June 7 absences he would not have been terminated as he was on June 8.  PSOF ¶ 49; Def.'s Res. PSOF ¶ 49.

Mr. Penson continued to communicate with Presby's to seek re-employment after his employment was terminated.  DSOF ¶ 29.  Ms. Roche testified that on June 15th, 2016, Mr. Penson faxed her a copy of his medical documentation.  Pl.'s Br. Exh. B, Roche Deposition at 51:2-5.  Further, Ms. Roche communicated to Ms. Bryk in an email sent on June 15, 2016, that she had received voicemails from Mr. Penson in which he stated that he was waiting for a phone call from Ms. Bryk.  Pl.'s Br. Exh. B, Roche Deposition at 51:6-17; Pl.'s Br. Exh. U.

Following his termination from employment with Presby's, on August 4, 2016 Mr. Penson was seen by Dr. Rahul Kapur of the Penn Medicine Orthopedic Surgery: Sports Medicine Center, and received diagnoses of "Hip pain, right," "Lumbar radicular pain," and "R hip OA/back pain," and was ordered to engage in "aquatic therapy/exercises."  Pl.'s Br. Exh. X.

7

He was apparently also subject to musculoskeletal imaging on August 4, 2016, and the reason for the exam was listed as "U/S-guided R hip injection for OA." Pl.'s Br. Exh. Y. On September 22, 2016 Dr. Kapur referred Mr. Penson to physical therapy for a diagnosis of "Arthritis of right hip." Pl.'s Br. Exh. Z. Mr. Penson had appointments with a physical therapy clinician at NovaCare on the following dates: June 13, 2016, June 14, 2016, June 20, 2016, June 21, 2016, June 27, 2016, June 28, 2016, July 7, 2016, July 8, 2016, August 10, 2016, August 11, 2016, September 26, 2016, September 29, 2016, October 11, 2016, and October 13, 2016. Pl.'s Br. Exh. Z.

## II. PROCEDURAL BACKGROUND

Plaintiff Willie Penson filed a Complaint in this Court on May 1, 2017 (ECF 1) alleging one count, a violation of the ADA. On August 9, 2017, Plaintiff filed the first Amended Complaint (ECF 13), again alleging a violation of the ADA, and adding a second count alleging a violation of the PHRA:

I. Discrimination, retaliation, and failure to accommodate, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112;

II. Discrimination, retaliation, and failure to accommodate, in violation of the Pennsylvania Human Relations Act, 43 P.S. § 955, ("PHRA").

Defendants filed an Answer to the first Amended Complaint along with Affirmative Defenses on September 1, 2017 (ECF 16). After discovery, Defendants filed a Motion for Summary Judgment on April 20, 2018 (36). Plaintiff responded in Opposition to Defendants' Motion for Summary Judgment on May 11, 2018 (ECF 39) and Defendants replied May 25, 2018 (40).

## III. LEGAL STANDARD

A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court . . . that there is an absence of evidence to support the nonmoving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by citing to particular parts of materials in the record" set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c)(1)(A). "Speculation and conclusory allegations do not satisfy [the non-moving party's] duty." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999) (superseded by statute on other grounds as recognized by P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009)). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

IV. DISCUSSION

Defendants move for summary judgment on both of Plaintiff's claims, which allege discrimination, retaliation, and failure to accommodate under two different statutory regimes: the ADA and the PHRA. Claims brought under these two statutory schemes are analytically identical and can be evaluated together. See, Taylor v. Phoenixville School Dist., 184 F.3d 296, 306 (3d Cir. 1999) (PHRA discrimination claims are subject to same analysis as ADA discrimination claims).

### A. Discrimination Claims

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to…the hiring, advancement, or discharge of employees…" 42 U.S.C. § 12112(a). The PHRA makes it unlawful "[f]or any employer because of the…non-job related handicap or disability…to discharge from employment such individual…if the individual…is the best able and most competent to perform the services required." 43 P.S. § 955(a).

Plaintiff's discrimination claims are subject to the three-part burden-shifting framework set out in McDonnell Douglas Corp v. Green, 411 U.S. 792 (1973). Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). A plaintiff faces the initial burden of establishing a prima facie case of unlawful discrimination. McDonnell Douglas, 411 U.S. at 802. The burden then shifts to the Defendant to articulate some legitimate, nondiscriminatory reason for the adverse treatment. Id. at 802-803. Finally, the ultimate burden rests with the plaintiff to demonstrate that those reasons are merely a pretext for unlawful employment discrimination. Id. at 804-805. As the Third Circuit has explained, "while the burden of production may shift, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Shaner, 204 F.3d at 500-501 (internal quotation and modification omitted).

"To establish a prima facie case of discrimination under the ADA, a plaintiff must [ ] show (1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Williams v. Philadelphia Housing Authority Police Dept., 380 F.3d 751, 761 (3d Cir. 2004) (internal quotation omitted). Defendants challenge that Plaintiff has not met his burden with respect to either the first or the third prongs of his prima facie case. Def.s' Br. in Support of Def.s' Mot. for Sum. Jmt. at 7-8; 12.

### B. Failure to Accommodate

"An employer commits unlawful disability discrimination under the ADA if [it] 'does not make reasonable accommodations to the known physical or mental limitations of an employee who is an otherwise qualified individual with a disability…'" Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 325 (3d Cir. 2003) (quoting 42 U.S.C. § 12112(b)(5)(A)) (citing Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 311 (3d Cir. 1999)). A successful failure to accommodate claim depends on the employer having been on notice that the employee desired accommodation: "'while the notice of a desire for an accommodation does not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation,' the notice nonetheless must make clear that the employee wants assistance for his or her disability.'" Jones v. United Parcel Service, 214 F.3d 402, 408 (3d Cir. 2000) (quoting Taylor, 184 F.3d at 313). Once the employer has notice of an employee's wish to be accommodated for a disability, it has an obligation to engage in "good faith" in an "interactive process" with the employee to determine what type of accommodations might be reasonable and sufficient. Taylor, 184 F.3d at 315-320.

Plaintiff asserts that the evidence establishes that Defendants were on notice that Mr. Penson needed a reasonable accommodation, and argues that a leave of absence for medical treatment may constitute such an accommodation under the ADA. Pl.'s Br. in Opposition to Def.s' Mt. for Sum. Jmt. at 26. Plaintiff further argues that Defendants acted in bad faith when they refused to have a legitimate discussion about how Presby's might accommodate Mr. Penson, and instead informed him that he could not be at work without full clearance to return with "no restrictions." Id. at 27. Plaintiff also points to the evidence that Defendants had a rule against accommodating absences of less than three days in support of their argument that Defendants acted in bad faith. Id.

**C.     Analysis**

Beginning with the first prong, Defendants argue that Mr. Penson has not established that he was disabled at the time of his termination from his employment with Presby's because he alleges only a very short-term medical condition, and he has not put forth sufficient evidence that he was substantially limited with respect to a major life activity as a result of this condition. Def.s' Br. at 7-8. Moreover, Defendants assert that Mr. Penson has not put forth any evidence that Presby's regarded him as disabled at the time of his termination from his employment, or that Presby's had any record of Mr. Penson having a disability. Id. at 10.

Plaintiff responds that the evidence shows that Presby's regarded Mr. Penson as having a physical impairment within the meaning of the ADA—specifically, he points to his testimony that Ms. Roche stated to him that a person who suffers from sciatica cannot work, and that he could not return to work unless he obtained documentation from a doctor indicating that he could return to work with "no restrictions." Pl.'s Br. at 10-12. Plaintiff further argues that he was clearly disabled in light of his significant pain associated with sciatica, later diagnosed as osteo

12

arthritis; he obtained a note indicating he could work "without restrictions," but only at the urging of Defendants and under threat of not being permitted to return to work if he did not, and he intended to return and work through the pain in light of this threat. Id. at 22-24. Plaintiff cites to several cases which have held evidence of sciatica and related back conditions to present a question of fact on whether an individual is disabled under the ADA. Id. at 23-24.

As noted above, Defendants had a policy of reserving the right to terminate an employee who had ten (10) absences from work. Defendants did not consider whether the absence was excused or not, or whether the employee was sick or not. As the Court understands the Plaintiff's position, this rule, because it did not involve an FMLA situation, was not necessarily improper or itself grounds for an improper termination.

The Plaintiff does not dispute that under the Defendants' system, up until June 6, 2015, he had incurred nine (9) absences and realized that one more absence would likely result in termination.

Plaintiff, nonetheless, asserted consistently that he was suffering from sciatica, a potentially severe back condition. Defendants have asserted that his condition was not that serious and there was not any reason why his medical condition would be evidence of Plaintiff being disabled or that Defendants acted improperly in refusing an accommodation. This is a genuine factual dispute.

Plaintiff testified at his deposition that after he had gone to an emergency room for treatment in the late evening into the early morning of June 5-6, 2016, Plaintiff then went to his employer and met with one of his supervisors, Ms. Roche. According to the deposition of Plaintiff and the supervisors, there are some material inconsistencies to their recollection of what happened on that day. Plaintiff asserts he was told to go to a previously arranged doctor's

appointment and he did so. There is no evidence that Plaintiff was specifically told on June 6, 2016 that he would be terminated as a result of this absence.

When Plaintiff saw his doctor, Plaintiff was told that he should remain absent from work because of his condition, on June 6 and 7, and Plaintiff testified that he followed this advice.

Plaintiff testified that when he went to back to work on June 8, he was advised that he was terminated. Defendant does not seriously contest these facts.

What has been contested is whether Plaintiff requested an accommodation because of his disability due to sciatica at any time prior to his being terminated.

Defendants argue that on the day of his tenth call out, Mr. Penson failed to communicate any information about any alleged disability to Presby's management, but instead, "merely handed Presby's some paperwork," and that his presence there in person that day undermines any claim that he was disabled. Def.s' Br. at 12.

Most importantly, at the oral argument on September 17, 2018, the Court reviewed Plaintiff's deposition in detail with counsel. Although Plaintiff initially testified at his deposition that he did not request an accommodation, he was asked the same question at least three other times, and on all three of those occasions gave testimony, either specifically or by strong implication, would allow a jury to find that he did request an accommodation from the Defendants in connection with his sciatica condition.

There are disputed facts about, one, the seriousness of Plaintiff's condition, and two, whether Plaintiff requested an accommodation. This requires that Defendant's Motion for Summary Judgment be denied.

Thus, the Court concludes that Plaintiff has established a prima facie case.

Moving to the second prong, Defendants argue that they had a legitimate non-discriminatory reason to terminate Plaintiff and that there is no evidence establishing that Mr. Penson was fired because of his alleged disability. To the contrary, the record shows that Plaintiff asked for an accommodation and Defendants instead terminated him. Thus, Presby's did not have a legitimate, non-discriminatory reason to terminate Mr. Penson's employment.

There exist genuine disputes regarding these material factual issues, thus precluding the Court from granting summary judgment on this record.

Although there are claims of retaliation here, in view of the Court's finding on the ADA claim, there is no need for any specific finding of fact on the retaliation claim, as both claims are intertwined and if the one goes to trial, then Plaintiff can proceed on the other, although at the close of Plaintiff's evidence, the Court may rule that Plaintiff has failed to sufficiently present evidence on either or both – but under Rule 56 and summary judgment principles, the Defendant's Motion for Summary Judgment must be denied.

V.  **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 36) is denied.

O:\CIVIL 17\17-1981 Penson v Phila Presbytery Homes\17cv1981 Memorandum on MSJ.docx